UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


ELIZA CAMPBELL,            )
     Plaintiff,          )
                   )
v.                      )     No.  3:06-CV-444
                   )     (Phillips)
ANDERSON COUNTY,      )
ANDERSON COUNTY SHERIFF'S OFFICE, )
PAUL WHITE, SHERIFF,     )
GERALD GRAHAM,       )
JOHN DOE(S), AND JANE DOE(S),  )
     Defendants.        )


## MEMORANDUM AND ORDER

This matter is before the court on defendants Anderson County, and Sheriff Paul White's motion for summary judgment.[1]  Plaintiff Eliza Campbell has responded in opposition.   For the reasons which follow, defendants' motions will be granted, whereby Anderson County, Sheriff Paul White, and defendant(s) John Doe(s) and Jane Doe(s) will be dismissed from this action.


## Statement of Facts

On November 15, 2006, plaintiff Eliza Campbell brought this cause of action under 42 U.S.C. §1983 alleging the named defendants violated her constitutional rights. Her cause of action stems from her allegation that defendant Gerald Graham, a reserve

---

[1]  Although defendant Gerald Graham was served with process, he has yet to appear or otherwise respond to plaintiff's complaint.

deputy with the Anderson County Sheriff's Office, forcibly raped her while on duty the night of October 3, 2006. Campbell contends that Anderson County's official policies or customs were a "moving force" behind the deprivation of her civil rights and arose as a result of "deliberate indifference" to her rights. *See Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996). Specifically, she argues that the sexual assault/rape would not have occurred but for the policy of the Anderson County Sheriff's Office permitting undertrained, unsupervised, volunteer reserve officers to transport female victims while donning all of the visual trappings of law enforcement officers, and that Anderson County is liable for the assault and battery of its employee reserve deputy.

On October 3, 2006, at approximately 9:51 p.m., Anderson County 911 received a call from Campbell concerning a domestic situation at 173 Cedar Grove Lane, Clinton, Tennessee. Campbell and her boyfriend had been arguing, and Campbell alleged that her boyfriend had assaulted her. Anderson County 911 dispatched Deputy Robert Bryson and Reserve Deputy Gerald Graham to the scene at approximately 9:53 p.m. The deputies were in separate cars. Instead of arresting either party, Deputy Bryson decided to separate the parties. Campbell agreed to leave and be transported to her father's home for the night. Deputy Graham agreed to the transport and Campbell got into Graham's patrol car. Deputy Bryson left the scene. Deputy Graham proceeded to transport Campbell to her father's home on Sanctuary Lane in Anderson County.

Upon arrival at her father's home, Campbell asked Graham to drive somewhere so they could talk. Graham left plaintiff's father's residence and drove to a

2

church parking lot. What happened next is disputed by the parties. According to Campbell's account, she exited the patrol car to use the bathroom. When she returned to the car, Graham put his arms around her and began kissing her. Campbell stated that she was afraid to refuse Graham because she was by herself and Graham was a law enforcement officer. Graham performed oral sex on Campbell; then Campbell performed oral sex on Graham. Campbell and Graham then each smoked a cigarette and Graham took Campbell to her father's residence. Defendant Graham did not dispute that he had sexual relations with Campbell, but claimed that the sexual contact was consensual. For the purposes of this motion, the court accepts Campbell's version of the facts that the sexual encounter was non-consensual.

Campbell told her father about the encounter with Graham and her father took her to a rape crisis center in Knoxville. A complaint of sexual assault was received by Anderson County 911 at approximately 3:00 a.m. and Detective Bowie was dispatched to the center. Lt. Ronnie Braden with the Anderson County Sheriff's Department also responded to the call. They interviewed Campbell and a rape examination was performed. At approximately 9:00 a.m., the officers went to the home of Gerald Graham. Graham initially denied any sexual contact with Campbell, however, on the second interview, Graham admitted the sexual conduct, but maintained it was consensual.

Graham was terminated as a Reserve Deputy by Sheriff Paul White on October 4, 2006.

## Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

4

## Analysis

### I. Municipal Liability

Campbell has brought this action pursuant to 42 U.S.C. § 1983 against Anderson County, the Anderson County Sheriff's Office, Sheriff Paul White, in his official and individual capacities, and against former reserve deputy Gerald Graham, in his official and individual capacities. The Anderson County Sheriff's Office is not a suable entity and is a Department within Anderson County. In addition, an action against a city official in his official capacity is treated as an action against the city itself. *Hafer v. Melo*, 502 U.S. 21 (1991). Thus, the issue of defendants White and Graham's liability in their official capacities will be decided by the determination of the issue regarding Anderson County's liability.

Section 1983 states in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, "while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.,* 428 F.3d 629, 636 (6th Cir. 2005). To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law.

5

*Gregory v. Shelby County,* 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *Gardenhire v. Shelby County*, 205 F.3d 303, 310 (6th Cir. 2000). In this case, Campbell asserts it was the policy or custom of Anderson County and the Anderson County Sheriff's Office to regularly utilize Graham and other reserve officers for the transportation of female victims/detainees in domestic and other situations. The County permitted its reserve officers to transport female detainees/arrestees outside the presence of a female officer and without the supervision of an Anderson County law enforcement officer of either sex. Further, that defendant Sheriff Paul White, as a policymaker for Anderson County, had knowledge of this policy or custom under which constitutional violations occurred and allowed its continuance. Campbell further asserts that as the supervisor of Graham and other reserve officers, Sheriff White was aware that reserve officers were regularly dispatched to transport females without supervision and was aware of the potential for sexual assaults and other constitutional violations that could result from such a policy. In continuing this policy as Sheriff, White exhibited deliberate indifference to the constitutional rights of female victims, arrestees, and detainees in Anderson County.

There is no question in this case that Campbell has alleged facts which, if proven, support her claim of a constitutional violation and injury against Graham, in his individual capacity. However, Campbell cannot rely on *respondeat superior* liability to hold Anderson County liable under § 1983. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Rather, under *Monell* and its progeny, a city may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694, and (2) when there is an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007). Campbell must establish that Anderson County's official policies or customs (or lack thereof) were a "moving force" behind the deprivation of her rights and arose as a result of "deliberate indifference" to her rights. *See Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996).

In order to impose municipal liability, a plaintiff bringing a § 1983 claim against a municipality must identity the policy or custom that caused her injury. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Identifying a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Id.* Once the policy is identified, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). The Sixth Circuit has stated:

> The key inquiry thus becomes whether, in viewing the [municipality]'s policy in the light most favorable to [plaintiff], there was sufficient evidence for reasonable minds to find "a direct causal link" between the County's policy and the alleged denial of [plaintiff]'s rights . . . . *See e.g., Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom.") (citing

7

> *Monell*, 436 U.S. at 694; *Garner v. Memphis Police Dep't*, 8
> F.3d 358, 364 (6th Cir. 1993) ("To satisfy the *Monell*
> requirement, a plaintiff must identify the policy, connect the
> policy to the city itself and show that the particular injury was
> incurred because of the execution of that policy.")

*Ford*, 535 F.3d at 497 (6th Cir. 2008).

Campbell does not argue that Anderson County has a custom of allowing sexual assaults by its officers or that the County lacks a policy prohibiting criminal behavior by its officers. Instead, Campbell contends that the constitutional violation chargeable to Anderson County arises from its policy of utilizing reserve officers for the transportation of female victims, detainees and arrestees in domestic and other situations outside of the presence of a female officer and without the supervision of an Anderson County law enforcement officer of either sex.

### A. Failure to Train

Campbell asserts that a jury could find that the Sheriff's Office and/or Anderson County failed to supervise or otherwise stay in regular contact with Graham while he was transporting Campbell and that policy and lack of supervision permitted the sexual assault to occur. Campbell also asserts that the need for more or different training and supervision was obvious, and the inadequacy so likely to result in the violation of constitutional rights, that Sheriff White and the County can reasonably be said to have been deliberately indifferent to the need.

8

In *City of Canton v. Harris*, 489, U.S. 378 (1989), the Supreme Court held that:

> the inadequacy of police training may serve as the basis for §
> 1983 liability only where the failure to train amounts to
> deliberate indifference to the rights of persons with whom the
> police come into contact . . . . Only where a failure to train
> reflects a "deliberate" or "conscious" choice by a municipality
> – a "policy" as defined by our prior cases – can a city be liable
> for such a failure under § 1983.

*Id.* at 388. Citing *City of Canton*, the Sixth Circuit held in *Russo v. City of Cincinnati*, 953 F.3d 1036 (6th Cir. 1992) that "to establish liability under *City of Canton*, the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Id.* at 1046. Moreover, it is not enough for a plaintiff "to show that his injury could have been avoided if the officer had more or better training." *Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999).

In order to succeed on such a claim, Campbell must show that the inadequacy of the County's training program was the result of deliberate indifference and that inadequacy is closely related to or actually caused her injuries. *Russo,* 953 F.2d at 1046. Even viewing the facts in a light most favorable to Campbell, she cannot meet this standard. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County*

*Comm'rs,* 520 U.S. at 410.  Here, Campbell relies on the affidavit of Scott Manning, the

former Sheriff of Anderson County:

> Anderson County reserve deputies are unpaid volunteers who do not receive the same extensive training required of other paid Anderson County law enforcement officers.  Anderson County reserve deputies wear the official uniforms, badges and indicia of the Anderson County Sheriff's Department, drive official vehicles, carry Department issued firearms and otherwise hold themselves out to the public as Anderson County law enforcement officers.  There is no policy to supervise reserve officers or monitor their transportation of female detainees, which based upon my experience as sheriff and training in law enforcement, is contrary to the standard of care of a reasonable law enforcement officer/sheriff in this particular case.  The Anderson County Sheriff's Department has a policy and custom of using reserve deputies for transports, including but not limited to, transporting female victims, detainees and/or arrestees.  Calling upon reserve deputies to conduct these transports is standard operating procedure.  There is no policy or procedure in place that requires male reserve officers to be accompanied by a female officer, reserve or otherwise, nor is there a policy specifically pertaining to supervision of male reserve officers when transporting female victims and/or detainees.  This practice, in my opinion, is a departure from the reasonable standard of care for a sheriff and, in this particular case, the facts constitute negligence on the part of the Office of the Anderson County Sheriff by failing to supervise the transportation of a vulnerable female domestic victim by a reserve officer and monitor his estimated time of arrival of the transport destination.  Although Anderson County reserve officers are regularly used for such transports, reserve officers receive little to no training specifically addressing transport of civilian females and/or sexual harassment and misconduct.  It is my opinion as the former Sheriff of Anderson County that this policy deviates from the standard of care of a reasonable sheriff in this particular case.

In a failure to train claim, the focus of the court's inquiry is on the training program. Here, defendant has submitted evidence from Mark Lucas, Chief Deputy Sheriff of Anderson County:

> From a review of [Graham]'s personnel file, it appears that Mr. Graham was appropriately trained as a reserve deputy. In other words, he had gone through his eighty (80) hours of initial training and his two hundred (200) hours of SPO training. He also successfully passed the SPO examination enabling him to operate a patrol vehicle. Mr. Graham also received forty (40) hours of in-service training each year. Mr. Graham filed an application to work at the Anderson County Sheriff's Department in July of 2003. He completed an application, successfully completed a background check, a psychological report, a physical exam, and all appropriate training. Mr. Graham's personnel file reflects different training certificates as well as commendation letters from members of the public appreciating his services. I am unaware of any prior incidence of alleged misconduct of which Mr. Graham was accused and acquitted of in Anderson County criminal court. I have not located any document or record establishing that any complaint had been made against Deputy Graham for any behavior prior to the incident which serves as basis for Eliza Campbell's Complaint on October 4, 2006. My review of Mr. Graham's personnel file reflects that he was terminated that day by Sheriff White upon his admission in engaging in sexual activity on duty with Ms. Campbell.

Although former Sheriff Scott Manning states that Anderson County reserve deputies do not receive the same extensive training required of other Anderson County law enforcement officers, Chief Deputy Mark Lucas testified that reserve officers are provided with extensive training both before and following their hire. As a prerequisite to being hired, each reserve officer must complete an application, successfully complete a background check, a psychological report, a physical exam, and complete 80 hours of initial training, as well as 200 hours of SPO training.

11

Federal courts addressing such claims have uniformly held that a single act of sexual misconduct by a police officer cannot form the basis of municipal liability under a failure to train theory. The court must apply "rigorous standards of culpability and causation" to justify liability on the defendant municipal entity. In addition, courts presented with similar complaints of sexual assault have uniformly found that training or its absence does not cause the plaintiff's injuries. In *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998), female jail inmates brought a § 1983 action alleging rape by jailers. The Tenth Circuit first concluded that there was no evidence the county knew of a pattern of violations and that there was no evidence the jail training programs were inadequate. The court also wrote "we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Id.* at 1308.

Similarly, in *Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996), the Eighth Circuit found: "In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women. Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officers' offending conduct." *See also Floyd v. Waiters,* 133 F.3d 786 (11th Cir. 1998); *Sewell v. Town of Lake Hamilton*, 117 F.3d 488 (11th Cir. 1997). Here, "the proper course of conduct – refraining from sexual assault and rape – is patent and obvious; structure training programs are not required to

12

instill it. Consequently, the absence of such programs (even if such absence was proven) is not so likely to cause improper conduct so as to justify a finding of liability." *Williams v. Bd. of County Comm'rs of Unified Govt of Wyandotte Cty.,*2000 WL 1375267 (D.Kan. Aug. 30, 2000) (cited with approval in *Oliver v. City of Berkley*, 261 F.Supp.2d 870 (E.D.Mich. 2003). *See also, Lewis v. Pugh*, 2007 WL 1394145 (E.D.Tex. May 11, 2007), *aff'd,* 289 Fed.Appx. 767 (5th Cir. 2008) ("Indeed, it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate."); *Breland v. City of Centerville, Ga.,* 2008 WL 2233595 (M.D.Ga. May 28, 2008) ("No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, without training, that they are not allowed to take sexual advantage of their prisoners.").

The court agrees with the reasoning set forth in the cases cited above. Refraining from raping women in police custody is so obvious that even if Anderson County were silent about such conduct, it would not give rise to a constitutional violation. The court finds that Anderson County's training procedures were sufficient as a matter of law, and that no specific training was necessary to inform officers not to rape or sexually assault women in their custody. Accordingly, Anderson County is granted summary judgment on Campbell's claim based on inadequate training.

13

B.  Failure to Supervise

As to Campbell's allegations that the Sheriff's Office and/or Anderson County failed to supervise or otherwise stay in regular contact with Graham while he was transporting her and that such policy and lack of supervision permitted the sexual assault to occur, the claim cannot proceed to a jury.

In order to impose liability, "the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be plainly obvious." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).  Here, there is no evidence creating a triable issue of fact that the plainly obvious result of Graham's lack of supervision would be a sexual assault.  Being able to prove opportunity is not the same thing as being able to prove that the County's lack of supervision was a "moving force" behind the deprivation of Campbell's rights and arose as a result of "deliberate indifference" to her rights.  *See Doe,* 103 F.3d at 508.  The link between the County's alleged lack of supervision and Campbell's alleged rape is too tenuous to allow this case to proceed to trial against the County.  The Supreme Court has specifically cautioned against imposing municipal liability in such cases.  *See City of Canton*, 489 U.S. at 391.  ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.  In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.")

14

In this case, in order to allow Campbell's argument to proceed to trial, the court must accept as a viable legal theory that anytime a police officer is left unsupervised it is "plainly obvious" that a rape could occur. The court rejects such an argument. As the Western District of Virginia stated in *Doe v. Cunningham,* 2006 WL 2819600 (W.D.Va. Sept 28, 2006):

> The court finds a policy or custom of transporting female inmates alone with male guards is not unconstitutional, because the majority of men, and the majority of prison guards, are not rapists merely waiting for an opportunity to assault a woman. This is not to say that this policy is wise or that a different policy would not have protected the plaintiff's undeniable right to bodily integrity more effectively. But absent a showing that transportation by a male guard alone is tantamount to a sentence of rape for any woman unfortunate enough to suffer it, the policy cannot be said to have caused the rape. Rather, the policy failed to prevent the rape, which is inadequate as a matter of law to support liability.

*Id.* at *2. This is not a situation where the County failed to supervise an officer even after repeated complaints of sexual misconduct. Campbell cannot show the required "widespread pattern of constitutional violations such that [Anderson County]'s actions or inactions amounted to a deliberate indifferent to the danger" of Graham sexually assaulting her. *Doe v. Claiborne County*, 103 F.3d at 513. Nor can Campbell show that the County "authorized, approved or knowingly acquiesced" in Graham's unconstitutional conduct, or that "the risk of a constitutional violation arising as a result of the [County]'s failure to supervised Graham was 'plainly obvious.'" *Gregory*, 444 F.3d at 752. Accordingly, Anderson County is granted summary judgment on Campbell's claim based on failure to supervise Graham.

II.  Sheriff Paul White (Individual Capacity)

Supervisory liability does not attach when supervisors are "sloppy, reckless, or negligent" in the performance of their duties.  *Doe v. City of Roseville*, 296 F. 3d 431, 439 (6th Cir. 2002).  Instead, the Sixth Circuit enunciates the standard as follows:

> [The] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982).  As the court has found that no training is necessary to prevent a police officer from committing sexual misconduct, Sheriff White is entitled to summary judgment on the failure to train claim.

The same standards of fault and causation apply to an individual supervisor's liability and the liability of a municipality for failure to supervise.  Thus, for the same reasons discussed above, Sheriff White is entitled to summary on the failure to supervise claim.  In sum, there is no evidence that Sheriff White "at least implicitly authorized, approved, or knowingly acquiesced" in Graham's alleged misconduct.  As Campbell has not stated a viable constitutional violation attributable to Sheriff White, the court need not complete the qualified immunity analysis.  Sheriff White is entitled to summary judgment on Campbell's § 1983 claims against him in his individual capacity.

16

### III. John and Jane Doe Defendants

Campbell filed her complaint on November 15, 2006. Plaintiff has yet to identify any of these unknown officers and, because she has failed to identity them, she has also failed to serve them, clearly in violation of the 120-day window provided by Federal Rule of Civil Procedure 4(m). Normally, a dismissal on Rule 4(m) grounds is without prejudice. However, this observation, while technically correct, is of little practical relevance given the fact that even if plaintiff were permitted to file her claims today against any other police officers, those claims would be barred by the applicable statute of limitations. *See* 3 Moore's Federal Practice, § 4.82[3] ("[A]ny dismissal ordered [under Rule 4(m)] after expiration of the statute of limitations for failure to establish good cause will be, in effect, with prejudice since plaintiff will be precluded from commencing a new action."). Campbell's claims arose on October 3, 2006, and the applicable statute of limitations in this case, Tenn. Code Ann. §28-3-104(3), is one year. Thus, even if the court were to dismiss the claims against the unknown officers without prejudice pursuant to Rule 4(m), Campbell's claims against them would clearly be time-barred. Consequently, Campbell's claims against the unknown officers will be dismissed with prejudice.

### IV. State Law Claims (Tennessee Governmental Tort Liability Act)

The County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liabilities Act (TGTLA). Tenn. Code Ann. §§ 29-20-101 through 29-20-407. The TGTLA codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities. Tenn. Code Ann. § 29-20-201; *Limbaugh v. Coffee Medical Ctr.,* 59 S.W.3d 73, 79 (Tenn. 2001);

*Baines v. Wilson County*, 86 S.W.3d 575, 578 (Tenn.App. 2002). The TGTLA affirms that municipalities in Tennessee are immune from suit with certain exceptions or waivers set forth in the TGTLA. *Doyle v. Frost,* 49 S.W.3d 853, 857 (Tenn. 2001). The limited waiver of sovereign immunity in the TGTLA is in derogation of Tennessee common law and must be strictly construed. *Limbaugh*, 59 S.W.3d at 83; *Doyle*, 49 S.W.3d at 858.

Under the TGTLA, Anderson County is generally subject to suit for civil claims sounding in negligence with certain enumerated exceptions. *Limbaugh,* 59 S.W.3d at 79; *Doyle*, 49 S.W.3d at 858. Tenn. Code Ann. § 29-20-205 provides in pertinent part that immunity from suit of all governmental entities is removed (waived) "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment, except if the injury arises out of . . . (2) false imprisonment pursuant to a mittimus from a court, . . . infliction of mental anguish, . . . or civil rights." Thus, the County has immunity from suit under the TGTLA for negligent acts or omissions of its employees if the injury arises out of the torts specified in Tenn. Code Ann. § 29-20-205(2). *Limbaugh*, 59 S.W.3d at 83.

Tenn. Code Ann. § 29-20-310(a) of the TGTLA provides that before a Tennessee governmental entity may be held liable in civil damages, a court must determine: (1) the acts of the governmental employee were negligent and were the proximate cause of the plaintiff's injury; (2) the employee was acting within the scope of his employment; and (3) none of the exceptions provided in Tenn. Code Ann. § 29-20-205 apply. Section 29-20-205 removes or waives the County's immunity from suit for injury

18

proximately caused by a negligent act or omission of a County employee committed within the scope of his employment with certain exceptions. False imprisonment, intentional infliction of emotional distress[2], and assault and battery are intentional torts that do not sound in negligence. Under the TGTLA, § 29-20-205, the County cannot be held liable for negligence based merely on the alleged commission of the intentional torts by Graham. The County has immunity from suit under the TGTLA unless Campbell can prove that the County committed a negligent act or omission which proximately caused her injuries. For Campbell to prevail on her claim seeking to hold the County liable for the intentional torts allegedly committed by Graham, she is required to prove that an independent act of negligence by the County or a County employee proximately caused the intentional torts that resulted in her injuries. *Baines,* 86 S.W.3d at 580. On this question, the County's liability for negligence under § 29-20-205, there are no genuine issues of material fact in dispute and the County is entitled to have summary judgment in its favor.

As stated above, there is no proof in the record showing that the County was negligent in hiring, training, or supervising Graham as a reserve police officer. There is no proof that the County, or one of its employees or agents, committed an independent negligent act or omission that proximately caused the intentional torts (false Imprisonment, assault and battery, intentional infliction of emotional distress) that resulted in Campbell's injuries. Accordingly, Campbell's claims against the County for false imprisonment, assault and battery, and intentional infliction of emotional distress are dismissed with prejudice.

---

[2] The phrase "infliction of mental anguish" includes the tort of intentional infliction of emotional distress. *Sallee v. Barrell*, 171 S.W.3d 822, 829 (Tenn. 2005).

In the alternative, there is a different reason why Campbell's claims against the County for false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence should be dismissed. These torts are alleged to have been committed solely in the context of the violation of Campbell's civil rights – this is in essence a civil rights suit.

Tenn. Code Ann. § 29-20-205(2) provides that immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of "civil rights." It is fair and reasonable to interpret the plain language in § 29-20-205(2) as meaning that civil rights claims are a type of intentional tort. *Brooks v. Sevier County,* 279 F.Supp.2d 954, 960 (E.D.Tenn. 2003). This court construes the term "civil rights" in § 29-20-205(2) as meaning and including claims arising under the federal civil rights laws, *e.g.*, 42 U.S.C. § 1983 and the United States Constitution.

Campbell's tort claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence brought against the County under Tennessee law are predicated on the alleged violation of her civil rights by Graham. The contention that former Reserve Deputy Graham committed false imprisonment, assault and battery, and intentional infliction of emotional distress clearly arise out of and directly flow from the allegations that he deprived Campbell of her civil rights by sexually assaulting her. Because Campbell asserts her claims against the County in the context of a civil rights case, her alleged injuries arise out of "civil rights" and the County is entitled to immunity

20

from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).

Although Campbell may seek to circumvent or avoid the County's immunity from suit under § 29-20-205(e) by couching some of her civil rights claims against the County in the guise of negligence, this strategy fails. The underlying acts which Campbell alleges to be negligent are by their very nature the type of conduct one usually associates with intentional torts (false imprisonment, assault and battery, intentional infliction of emotional distress). Campbell's negligence claim is predicated on intentional tortious conduct involving the violation of her civil rights by employees of the County. Based on the facts and circumstances of this case, the court see no reason why the County should not have immunity from suit under the "civil rights" exception in Tenn. Code Ann. § 29-20-205(e).

### Conclusion

In sum, there is no proof that (1) Anderson County had a custom or policy which could support Campbell's § 1983 claim against the County, (2) that the County was deliberately indifferent by failing to adequately train and supervise Graham, and (3) that there was a direct causal link between a County custom or policy and the alleged deprivation of Campbell's rights under the United States Constitution. Nor can Campbell hold the County liable for her claims brought pursuant to state law. Accordingly, Campbell's cause of action brought against Anderson County under § 1983 will be dismissed with prejudice because Campbell cannot prove the County is liable for the

21

actions of Gerald Graham pursuant to § 1983. In addition, Campbell's claims against Anderson County and Sheriff Paul White brought pursuant to Tennessee state law will be dismissed as well. Accordingly, the motion for summary judgment [Doc. 40] filed by defendants Anderson County and Sheriff Paul White, officially and in his individual capacity, is hereby **GRANTED,** and defendants Anderson County, Sheriff Paul White, and defendants John Doe(s) and Jane Doe(s) are **DISMISSED** from this action.

The only remaining claims in this matter are those against defendant Gerald Graham, in his individual capacity.

**IT IS SO ORDERED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge